

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRIAN K. RICE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:24-cv-33-ACA** |
| | ) |
| **RACHEL LAURIE** | ) |
| **RIDDLE,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Brian Rice sought a loan from Defendant Synovus Bank so that he could make improvements on properties he owns in Birmingham, Alabama. Synovus (through its employees, Defendants Nelson Bean and Bill Inabinet) hired Defendant CBRE, Inc., to do an appraisal of the properties. CBRE (through two of its employees, Defendants Barry Harvill and Ronald Neyhart) appraised Mr. Rice's land at $45,000 but the building improvements at $0, so that Mr. Rice could not obtain the loan he sought from Synovus. Mr. Rice complained about CBRE's appraisal to the Alabama Real Estate Appraisers Board, but its employees, Defendants Lisa Brooks and Neva Conway, did nothing. Mr. Rice then sought to have his property taxes lowered based on the appraisal, but Defendant Maria Knight, an employee of the Jefferson County Board of Equalization, denied him a hearing and ultimately falsely represented that he had accepted the higher valuation. Finally,

Mr. Rice complained to the Alabama Department of Examiners of Public Accounts about the Appraisers Board's failings, but its employees, Defendants Rachel Riddle and Charles Bass, also did nothing.

Mr. Rice sues Defendants for defrauding him and for violating constitutional law, 42 U.S.C. § 1981, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and a federal criminal statute. (Doc. 4). Various sets of defendants move to dismiss the complaint. (Docs. 23, 28, 31, 57). Synovus and its employees also move to strike an affidavit Mr. Rice has filed. (Doc. 37).

In response briefing, Mr. Rice concedes that his claim about violating a federal criminal statute (brought in Count Eleven) fails. (Doc. 38 at 17; doc. 40 at 17). Accordingly, the court **WILL DISMISS** that claim without further discussion. The court also **WILL GRANT** the motion to dismiss all claims against Synovus, Mr. Bean, Mr. Inabinet, CBRE, Mr. Harvill, and Mr. Neyhart **WITH PREJUDICE** as barred by the statute of limitations. (Docs. 23, 28). The court therefore **FINDS AS MOOT** Synovus's motion to strike Mr. Rice's affidavit. (Doc. 37). Next, the court **WILL GRANT** the motion to dismiss all claims against Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass **WITHOUT PREJUDICE** for lack of subject matter jurisdiction because Mr. Rice has not demonstrated standing to bring those claims. Finally, the court **WILL GRANT** Ms. Knight's motion to dismiss the claims against her **WITHOUT PREJUDICE** because the Tax Injunction Act, 28

U.S.C. § 1341, bars Mr. Rice's lawsuit against her in her official and individual capacities. (Doc. 57).

## I.  BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court also considers the letter Mr. Rice attached to his complaint. *See Hoefling v. City of Miami,* 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."); (*see* doc. 4 at 44–58).

In July 2018, Mr. Rice approached Synovus Bank about a loan to maintain and develop properties he owned in Birmingham. (Doc. 4 ¶ 20). After months of delay, Synovus assigned Mr. Rice to a regional retail sales manager, Mr. Inabinet, who promised to expedite an appraisal on the properties. (*Id.* ¶¶ 21–23). In March 2019, an appraisal company visited Mr. Rice's properties but told him that Synovus had instructed the company to stop the appraisal. (*Id.* ¶ 24). In June 2019, a different appraisal company, CBRE, did an appraisal of the properties. (*Id.* ¶ 27). Mr. Harvill is CBRE's Vice President of Valuation & Advisory Services for the Southeast Region and Mr. Neyhart is CBRE's Senior Managing Director. (Doc. 4 at 4–5).

CBRE appraised the land at $45,000 and the building improvements at $0; the appraiser apparently opined that the buildings on the properties needed to be demolished and used the cost of demolition against the appraised value. (*Id.* ¶¶ 29, 38). The appraisal did not include any of the rent that Mr. Rice's renters paid to be on the properties. (*Id.* ¶ 30; *see also id.* ¶ 36; *id.* at 46). And the appraisal compared Mr. Rice's properties to a vacant coin-operated car wash and rural land located fourteen miles away. (*Id.* at 46–47). The $0 building-improvements appraisal meant that Mr. Rice would not be able to borrow money from Synovus. (Doc. 4 ¶ 30). In the same year, the Jefferson County Board of Equalization valued his properties at $229,790 for purposes of the 2019 ad valorem taxes. (*Id.* at 46, 48).

In late June 2019, Mr. Rice met with Synovus Bank's Division Chief Executive Officer, Mr. Bean. (*Id.* ¶ 31). Mr. Bean told Mr. Rice that Synovus should have assigned him a commercial appraiser, not a regional retail sales manager, and assigned Mr. Rice to a commercial banker, who asked Mr. Rice to resubmit new paperwork. (*Id.* ¶ 32).

In September 2019, Mr. Rice filed a complaint with the Alabama Real Estate Appraisers Board, which regulates appraisers. (Doc. 4 ¶ 33). Ms. Brooks is the Executive Director and Ms. Conway is legal counsel for the Appraisers Board. (*Id.* at 2–3). The Appraisers Board did not respond for over a year and the response it ultimately sent was too vague for Mr. Rice to understand, stating that "[a]ction as

4

deemed appropriate by the Board has been taken." (*Id.* ¶¶ 34–35; *id.* at 51). In a conversation in October 2020, Ms. Conway told Mr. Rice she was not sure if the Board had considered Mr. Rice's rent roll or if the Board had reviewed the unfair comparable properties CBRE used in appraising the properties. (*Id.* ¶¶ 35–37). During the same conversation, Mr. Rice challenged the appraiser's qualifications to make other determinations in connection with the appraisal. (Doc. 4 ¶¶ 38–39). Although Mr. Rice has continued to contact the Appraisers Board since September 2019, the Appraisers Board has "failed to disclose, fail[ed] to correct, and fail[ed] to discipline" CBRE. (*Id.* ¶ 40).

In December 2020, Mr. Rice contacted the Jefferson County Board of Equalization, seeking to lower his property taxes in light of the $0 building-improvement appraisal. (*Id.* ¶¶ 41–42). Ms. Knight, the employee assigned to Mr. Rice's case, told Mr. Rice that he could file a late protest because he had not received a tax card. (*Id.* ¶ 42). Mr. Rice filed a late tax protest in December 2020 and Ms. Knight quickly denied the protest and told him to wait until the 2021 tax season to refile. (Doc. 4 ¶ 42).

On July 26, 2021, Mr. Rice filed a tax protest. (*Id.* ¶ 43). Mr. Rice also helped a white landowner who owned property two blocks from Mr. Rice's property to protest his new property taxes. (*Id.* ¶¶ 50–52). The white landowner was able to get his property valuation reduced. (*Id.* ¶ 50). But although Ms. Knight told Mr. Rice in

September 2021 that she would give him a hearing date, she never actually did so. (Doc. 4 ¶¶ 44–45). In December 2021, the Board of Equalization sent out finalized property valuations with a deadline to agree or disagree by January 12, 2022. (*Id.* ¶ 46). This time, the Board of Equalization valued his properties at $122,800. (*Id.* at 48). Mr. Rice filed a new objection to the property valuation, but Ms. Knight represented that he had "accepted not being heard." (*Id.* ¶ 46).

In May 2022, CBRE sent Mr. Rice a letter stating that the Appraisers Board had found CBRE conducted the appraisal properly and had taken no action on Mr. Rice's complaint. (Doc. 4 ¶ 58). CBRE also noted that Mr. Rice could not request modifications in the appraisal because Synovus Bank, not Mr. Rice, was CBRE's client. (*Id.* ¶ 59).

In May 2023, Mr. Rice received a letter from the Alabama Department of Examiners of Public Accounts, which "oversee[s] State agencies and ensur[es] state agencies are performing their duties according to clearly established law." (*Id.* ¶ 60). The Department confirmed that it was reviewing the complaint Mr. Rice had filed with the Appraisers Board and asked if Mr. Rice had questions, concerns, or problems with the Appraisers Board. (*Id.* ¶ 61). Mr. Rice responded with a letter "detailing local, state, and federal laws broken and unfair and unconscionable treatment" from the Appraisers Board. (Doc. 4 ¶¶ 62–69; *see also id.* at 44–58). Ms. Riddle, the chief examiner for the Department of Examiners, and Mr. Bass, an

examiner, never took any action based on Mr. Rice's complaint. (*Id.* ¶¶ 70–72; *see also id.* at 2).

## II.   SHOTGUN PLEADING

Before addressing the parties' arguments in connection with the motions to dismiss, the court must address whether Mr. Rice's complaint is a shotgun pleading. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." And Federal Rule of Civil Procedure 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." The Eleventh Circuit has explained that pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Shotgun pleadings fall into "four rough types or categories." *Id*. at 1323. The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. at 1321. The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. The

third is one that does "not separat[e] into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322–23. And the fourth type of shotgun complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323.

The Eleventh Circuit has repeatedly and vehemently condemned shotgun pleadings. *See Est. of Bass v. Regions Bank*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020) ("As of 2008, [the Eleventh Circuit] had explicitly condemned shotgun pleadings upward of fifty times.") (quotation marks omitted); *see also Weiland*, 792 F.3d at 1321 (stating that as of 2015, the Eleventh Circuit had published more than sixty opinions about shotgun pleadings). The Court strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Est. of Bass*, 947 F.3d at 1358.

Mr. Rice's complaint bears a twist on one of the classic hallmarks of a shotgun pleading. A typical shotgun pleading's counts incorporate by reference every preceding paragraph. *See Weiland*, 792 F.3d at 1320. Mr. Rice's complaint does not do that. (*See* doc. 4 ¶¶ 90, 113, 128, 135, 143, 152, 159, 167, 174, 190, 208). It does, however, incorporate not only every factual allegation made in paragraphs 1 through 90, but also all "subsequent paragraphs" in the complaint. (*Id.*). The effect is that

every count is "a combination of the entire complaint." *Weiland*, 792 F.3 at 1321.

Nevertheless, each count specifies the defendant named. (*See* doc. 4 ¶¶ 91, 114, 129,

136, 144, 153, 160, 168, 178, 192, 213). And although Mr. Rice includes many

factual allegations, not all of which are relevant to each count, the court and the

parties have been able to discern the basis for his claims. *Cf. Weiland*, 792 F.3d at

1325 ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is virtually

impossible to know which allegations of fact are intended to support which claim(s)

for relief.") (quotation marks omitted). So the court declines to order repleading of

the complaint. The court understands Mr. Rice's claims to be:

(1)   Ms. Brooks and Ms. Conway violated Mr. Rice's Fourteenth Amendment rights to due process and equal protection and his Fifth Amendment right against takings by permitting CBRE to violate various rules, codes, and laws ("Counts One, Four, and Seven");

(2)   Ms. Knight violated 42 U.S.C. § 1981, the Fourteenth Amendment right to due process and equal protection, and the Fifth Amendment right against takings by not allowing Mr. Rice to protest his property taxes ("Counts Two, Three, Six, and Eight");

(3)   Ms. Riddle and Mr. Bass violated Mr. Rice's Fourteenth Amendment rights by allowing Ms. Brooks and Ms. Conway to act unlawfully ("Count Five");

(4)   Ms. Brooks, Ms. Conway, Ms. Knight, Synovus, Mr. Bean, Mr. Inabinet, CBRE, Mr. Harvill, and Mr. Neyhart violated RICO by conspiring to defraud Mr. Rice, suppress economic development, and interfere with commerce ("Count Nine"); and

(5)   All defendants engaged in fraud or fraudulent concealment with respect to the appraisal ("Count Ten").

9

(Doc. 4 ¶¶ 90–217; *see also* doc. 38 at 17; doc. 40 at 17). Mr. Rice's claims against Ms. Riddle and Mr. Bass are in their official capacities only (*see* doc. 4 at 2), and his claims against Ms. Brooks, Ms. Conway, and Ms. Knight are in their official and individual capacities (*see id.* at 2–3, 5). The other individual defendants (Mr. Bean, Mr. Inabinet, Mr. Harvill, and Mr. Neyhart) are employees of private entities, not state or federal employees, so the claims against them are in their individual capacities only. (*See id.* at 4–5).

In a commendable effort to be comprehensive, some of the defendants have moved to dismiss claims that the court does not construe the complaint to assert against them. (*See, e.g.*, doc. 23 at 3; doc. 28-1 at 15–28; doc. 57 at 6–7). Given the court's construction of the complaint, the court does not address any defendant's arguments about dismissal of claims Mr. Rice does not bring against that defendant.

## III. DISCUSSION

Defendants have, between them, filed four Federal Rule of Civil Procedure 12(b)(6) motions to dismiss the complaint. (Docs. 23, 28, 31, 57). To survive a Rule 12(b)(6) motion, a party must "plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because the same analysis is required to address the motions filed by Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart, the court will address those motions together. (Docs. 23, 28). The court will then address the motion filed by Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass (doc. 31), followed by the motion filed by Ms. Knight (doc. 57).

1. <u>Motions Filed by Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart (Docs. 23, 28)</u>

Mr. Rice asserts two claims against these six defendants: Count Nine (violation of RICO) and Count Ten (state law fraud). (Doc. 4 ¶¶ 178, 192). Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart contend that the statute of limitations bars these claims and that each claim fails on the merits. (Doc. 23 at 9–21; doc. 28-1 at 12–15, 17–28). The court begins and ends with the statute of limitations.

"Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984). "A statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in [the] complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (quotation marks omitted). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller*, 727 F.2d at 1069.

In Count Nine, Mr. Rice asserts that these six defendants (and several more) violated RICO. (Doc. 4 ¶¶ 174–89). RICO has a four-year statute of limitations for civil claims, running from the date the plaintiff knew or should have known of his injury. *Rotella v. Wood*, 528 U.S. 549, 552–54 (2000). According to Mr. Rice's complaint, the basis for this claim against these defendants is CBRE's issuance of an unconscionable appraisal and Synovus's approval of that appraisal. (Doc. 4 ¶ 184). Mr. Rice must have known of both CBRE's appraisal and Synovus's acceptance of that appraisal by September 2019, when he complained to the Appraisers Board about the appraisal. (*See id.* ¶¶ 29–33). Accordingly, Mr. Rice's RICO claim against these defendants accrued in September 2019 and expired four years later in September 2023. *See Rotella*, 528 U.S. at 552–54. But Mr. Rice did not file his initial complaint until January 2024, well after the limitations period ended. (*See* doc. 1).

Mr. Rice contends that the statute of limitations has not expired because Ms. Brooks, Ms. Conway, and Ms. Knight have continued to take wrongful actions. (Doc. 33 at 8–9; doc. 38 at 7–9). But he has not explained how Ms. Brooks, Ms. Conway, and Ms. Knight's actions could extend the statute of limitations applicable to claims brought against Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart. (*See* doc. 33 at 8–9; doc. 38 at 7–9). The statute of limitations bars Count Nine against these six defendants.

In Count Ten, Mr. Rice asserts that Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart engaged in fraud or fraudulent concealment, in violation of Alabama tort law, with respect to the appraisal. (Doc. 4 ¶¶ 190–207). Alabama law has a two-year statute of limitations for fraud claims, running from "the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3; *see also id.* § 6-2-38(*l*). But again, Mr. Rice knew about the appraisal and Synovus's acceptance of the appraisal by September 2019 at the latest. (*See* doc. 4 ¶¶ 29–33). Accordingly, the statute of limitations expired in September 2021. *See* Ala. Code § 6-2-3; *see also id.* § 6-2-38(*l*). But Mr. Rice did not file his initial complaint until January 2024. (Doc. 1).

As with Count Nine, Mr. Rice contends that actions taken by Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass after September 2019 preclude application of the statute of limitations. (Doc. 33 at 10–11; doc. 38 at 10–11). But he has not explained why the actions of those defendants should be attributable to Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, or Mr. Neyhart. (*See* doc. 33 at 10–11; doc. 38 at 10–11). The statute of limitations bars Count Ten as to these defendants.

The court **WILL GRANT** the motions to dismiss Counts Nine and Ten against Synovus, Mr. Inabinet, Mr. Bean, CBRE, Mr. Harvill, and Mr. Neyhart **WITH PREJUDICE** for failure to state a claim. And because the court will grant the motion to dismiss, the court **FINDS AS MOOT** Synovus, Mr. Inabinet, and

Mr. Bean's motion to strike an affidavit Mr. Rice filed in opposition to their motion. (Doc. 37).

>    2. Ms. Riddle, Mr. Bass, Ms. Brooks, and Ms. Conway's Motion to Dismiss (Doc. 31)

In Counts One and Four, Mr. Rice asserts that Ms. Brooks and Ms. Conway violated his Fourteenth Amendment rights by failing to stop CBRE's unethical behavior. (Doc. 4 ¶¶ 90–112, 135–42). In Count Five, Mr. Rice contends that Ms. Riddle and Mr. Bass violated his Fourteenth Amendment rights by failing to adequately respond to his complaint about the Appraisers Board (*Id.* ¶¶ 143–51). In Count Seven, Mr. Rice charges that Ms. Brooks and Ms. Conway violated his Fifth Amendment rights by acting with deliberate indifference to CBRE's violations of ethics rules and various laws (*Id.* ¶¶ 159–66). In Count Nine, Mr. Rice alleges that Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass violated RICO because Ms. Brooks and Ms. Conway "permitted known dangers to Plaintiff['s] properties and committed nonfeasance and official misconduct and bad faith acts to remove Plaintiff[']s rights to property." (*Id.* ¶ 184). And in Count Ten, Mr. Rice asserts that Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass engaged in fraud by concealing their failure to investigate, take corrective action, and discipline either CBRE or the Appraisers Board. (Doc. 4 ¶¶ 192, 194, 202–03, 205). In short, Mr. Rice's claims against these four defendants arise from their failure to investigate and discipline

either CBRE (for Ms. Brooks and Ms. Conway) or the Appraisers Board (for Ms. Riddle and Mr. Bass).

These four defendants move to dismiss the claims against them, arguing that Mr. Rice lacks standing to bring these claims, the applicable statutes of limitations bar the claims, Mr. Rice fails to state a claim, state sovereign immunity bars any official capacity claims, and qualified immunity or state agent immunity bar any individual capacity claims. (Doc. 31 at 1–2). Because Mr. Rice lacks standing to assert his claims against these four defendants, the court does not address any of the other arguments raised by the defendants.

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over "cases" or "controversies." U.S. Const. art. III, § 2; *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing by showing that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "An injury in fact consists of 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Trichell*, 964 F.3d at 996

(quoting *Lujan*, 504 U.S. at 560). "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993). A plaintiff must have standing for each claim he asserts. *Town of Chester v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017).

Ms. Brooks, Ms. Conway, Ms. Riddle, and Mr. Bass contend that Mr. Rice has not shown an injury in fact because Mr. Rice has no cognizable interest in the Appraisers Board's or the Department of Examiners' prosecution of entities or people other than Mr. Rice. (Doc. 32 at 7–8). They also argue that Mr. Rice cannot establish traceability because Mr. Rice's injury—the low appraisal and resulting inability to get a loan—was caused by CBRE, not them. (*Id.* at 8–9).

In support of their argument about Mr. Rice's lack of a protected interest, these defendants rely on *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). (*Id.* at 7–8). In that case, the plaintiff had sued a number of defendants, including the father of her child, the State of Texas, and several state employees, seeking an injunction barring the district attorney from declining to prosecute the father of her child for his failure to pay child support. *Linda R.S.*, 410 U.S. at 615–16. The Supreme Court held that, "in the unique context of a challenge to a criminal statute, [the plaintiff] has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention." *Id.* at 617–18. Although the failure of her child's father to pay child support injured her, she had "made no showing that

16

her failure to secure support payments results from the nonenforcement" of the state statute criminalizing nonpayment. *Id*. at 618. And if she obtained the injunction she sought, "it would result only in the jailing of the child's father," not necessarily his payment of support. *Id.*; *see Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 n.24 (1978) (noting that the *Linda R.S.* plaintiff lacked standing "because of the unlikelihood that the relief requested would redress [her] claimed injury"). In other words, the Court found that although the plaintiff had demonstrated an injury in fact, she had not shown traceability or redressability.

The injury Mr. Rice alleges in each of his claims against these four defendants is the loss of value of his property because of CBRE's appraisal. (*See* doc. 4 ¶¶ 90–112, 135–51, 159–66, 179, 194, 202–03, 205). Mr. Rice certainly has a legally protected interest in the value of his properties. *See Trichell*, 964 F.3d at 996. His lack of a legally protected interest in any disciplinary proceeding the Appraisers Board or the Department of Examiners might bring does not negate the interest he does have. *Cf. Linda R.S.*, 410 U.S. at 617–18. The problem for Mr. Rice is that he has not shown that these four defendants caused the injury to his protected interest. *See Linda R.S.*, 410 at 618.

"Article III standing requires a causal connection between the injury and the conduct complained of—in other words, the injury must be fairly traceable to the challenged action of the defendant." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259,

1271 (11th Cir. 2019) (quotation marks omitted). Mr. Rice's injury was caused by CBRE's appraisal and Synovus's acceptance of that appraisal, not by the failure of any regulatory authorities to investigate or discipline CBRE after it issued the appraisal. He therefore has not demonstrated the traceability element of standing, and the court **WILL GRANT** Ms. Conway, Ms. Brooks, Ms. Riddle, and Mr. Bass's motion to dismiss the claims against them **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

    3.  <u>Ms. Knight's Motion to Dismiss (Doc. 57)</u>

    In Count Two, Mr. Rice alleges that Ms. Knight violated the Fifth Amendment by denying him a hearing to protest his property tax valuation (Doc. 4 ¶¶ 113–27). In Count Three, he alleges that Ms. Knight violated 42 U.S.C. § 1981 by allowing a white taxpayer to protest his property valuation while denying Mr. Rice the same right. (*Id.* ¶¶ 128–34). In Count Six, Mr. Rice contends that Ms. Knight violated the Fourteenth Amendment by denying Mr. Rice a hearing. (*Id.* ¶¶ 152–58). In Count Eight, Mr. Rice asserts that Ms. Knight violated his Fifth Amendment rights by denying him the hearing. (*Id.* ¶¶ 167–73). In Count Nine, Mr. Rice alleges that Ms. Knight violated RICO by removing his right to protest the property valuation. (*Id.* ¶ 184). And in Count Ten, Mr. Rice alleges that Ms. Knight defrauded him by denying him a hearing and making false statements to him "about

lawful process." (*Id.* ¶ 204). Mr. Rice brings all of these claims against Ms. Knight in both her official and individual capacities. (*Id.* at 5).

Ms. Knight moves to dismiss all official-capacity claims based on Eleventh Amendment immunity, all claims against her based on the statute of limitations, Count Nine based on "qualified, or discretionary-function immunity," and any attempt to challenge Alabama's taxation scheme based on the Tax Injunction Act, 28 U.S.C. § 1341. (Doc. 57 at 4–7). Because the court agrees that the Tax Injunction Act deprives this court of jurisdiction over Mr. Rice's claims against Ms. Knight, the court addresses only that argument.

The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. It bars "the exercise of federal jurisdiction if two conditions are met: (1) the relief requested by the plaintiff will enjoin, suspend, or restrain a state tax assessment and (2) the state affords the plaintiff a plain, speedy and efficient remedy." *Williams v. City of Dothan*, 745 F.2d 1406, 1411 (11th Cir. 1984) (quotation marks omitted).

As set out above, the court does not construe Mr. Rice to be challenging Alabama's taxation scheme or even the imposition of property taxes on him. *See supra* at 9–10. Instead, he alleges that Ms. Knight, in her individual and official

capacity, denied him rights (such as the right to a hearing to protest the property valuation) that state law affords him. (*See* doc. 4 ¶¶ 113–34, 152–58, 167–73, 184, 204). But the former Fifth Circuit has held that the Tax Injunction Act bars "[a] federal court suit for damages against a state tax administrator, based on the theory that the administrator tortiously enforced an unconstitutional tax," because success in that suit "would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have." *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir. 1980).[1] Accordingly, the court must determine whether success on Mr. Rice's claims would have the same effect as an injunction and whether Mr. Rice has adequately alleged that he lacks a plain, speedy, and efficient remedy in the state courts. *See Williams*, 745 F.2d at 1411; *Amos v. Glynn Cnty. Bd. of Tax Assessors*, 347 F.3d 1249, 1256 (11th Cir. 2003), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

In an unpublished decision relying on *Sunnuck*, the Eleventh Circuit concluded that the Tax Injunction Act deprived a district court of jurisdiction over claims similar to Mr. Rice's against Alabama Department of Revenue employees. *Kelly v. Ala. Dep't of Rev.*, 638 F. App'x 884, 886–87, 889–992 (11th Cir. 2016). The plaintiff in that case had requested monetary damages "for federal statutory and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

civil rights violations" as well as injunctive and declaratory relief. *Id.* at 891. The Eleventh Circuit, noting that it did not have a "complete categorical bar to damages claims," nevertheless concluded that the district court "correctly dismissed" the claims for money damages because they effectively sought "to restrain or suspend state tax collection." *Id.*

Although *Kelly* is not binding on this court, it is persuasive when considered in combination with *Sunnuck*. Just as in *Kelly* and *Sunnuck*, an award of money damages for Mr. Rice's claims that Ms. Knight failed to follow the proper procedures in assessing property taxes against him and in evaluating his protest of the property taxes "would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have." *A Bonding Co. v. Sunnuck*, 629 F.2d at 1133; *see also Kelly*, 638 F. App'x at 891. And Mr. Rice has not alleged that the state does not provide a "a plain, speedy and efficient remedy" in the state courts. *See Williams*, 745 F.2d at 1411; (*see generally* doc. 4; doc. 59 at 8–10). Indeed, Alabama Code § 40-3-25(a) provides for an appeal to the state circuit court from "the rulings of the board of equalization fixing the value of property."

Because the Tax Injunction Act bars Mr. Rice's claims against Ms. Knight, the court **WILL GRANT** her motion and **WILL DISMISS** all claims against her **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

## IV.   CONCLUSION

The court **WILL GRANT** the motions to dismiss. (Docs. 23, 28, 31, 57). The

court **FINDS AS MOOT** the motion to strike Mr. Rice's affidavit. (Doc. 37).

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this August 27, 2024.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

22